Good morning. May it please the Court, my name is Eric Seitz and I represent the appellants in this matter. There are two separate and distinct reasons I would submit to you why this Court should vacate Judge Kaye's decision below and remand the case for further proceedings. The first is, in our view, Judge Kaye failed to engage in the specific functional analysis as to the acts of each defendant. That is required by the Supreme Court, most recently in the Antoine and McAleena case, and by this Court, most recently in Miller v. Cammey, to determine which acts may be entitled to absolute immunity. Secondly, even though there was evidence of pervasive misconduct, repetitive misconduct in this case, Judge Kaye failed to make any determination, any factual findings, as to whether and at what point in time certain or all of the actors abandoned their roles as prosecutors and thereby gave up any claim they may have to absolute immunity. And those are separate arguments that I wish to elaborate upon. With respect to the first argument, there were flagrant abuses and uses of administrative subpoenas at a point in time over the course of about a year when some several hundred subpoenas were issued in the investigative phase where there was a team that was investigating both civil and criminal allegations at the same time. And we would contend that the mixture of that process, calling people in by subpoena without giving them their rights, without necessarily having an explanation to them as to for what purpose, the information was being sought. Can I just interrupt you for a moment? Surely. So is your primary argument regarding the use of the administrative subpoenas that they violated some constitutional right? They were no. The violation is that they mixed together civil and criminal functions.  The prosecutor, or in this case the Attorney General, is entitled to issue administrative subpoenas. Exactly. So what case authority are you relying upon to support your argument that the mixing of criminal and civil functions is a constitutional violation? Well, first of all, there are very – Could you answer that question first? Yes. I'm going to try and do that. There is not a lot of authority with respect to administrative subpoenas. Is there, Emmy? There's virtually none. That's correct. The authority to issue administrative subpoenas has been upheld at various times. But the use of them for ambiguous purposes has never really been litigated. Okay. This is an action under Section 1983. Yes. And in order for an action to succeed under 1983, a state actor must violate a constitutional right. That's right. So I'm asking you, what is the constitutional right that you are advocating was violated by the mixing of criminal and administrative subpoenas? What constitutional right was violated? In the investigative phase of this case, which preceded going to the grand jury, the Attorney General basically launched an unlimited fishing expedition against my clients with a view toward seeking any kind of remedies, be they civil or criminal, in order to force their removal as trustees of the Bishop Estate. And then what constitutional right was violated? Well, with respect to just the administrative subpoenas, I cannot argue to you that there was a specific constitutional right. But that was one of several. The wrong that you articulated, the first wrong you articulated for us, was the mixing of the criminal and the civil proceedings. Is that correct? What I'm arguing to you, no, that's not correct. Okay. What is the wrong that you are advancing at this point? The wrong that I'm advancing to you is that Ms. Bronster, in her capacity as the Attorney General, initiated a vendetta against my client, acting without probable or sufficient cause or justifiable authority to find whatever courses of action she could to pursue either as a civil or a criminal matter. Okay. One of the ways. What constitutional right are you asserting was violated? Well, first of all. Did you answer that question? Yes. I'm going to answer that. I'm going to answer it right now. First of all, a prosecutor cannot pursue charges without a reasonable basis of probable cause for doing so. Secondly, a prosecutor cannot convene a grand jury. What would you name the constitutional right that is violated? It's a simple due process right to put somebody in a position where he is being attacked with criminal charges and with civil charges all across the board without a basis for doing so. A substantive due process or procedural due process? Substantive due process in this instance. Okay. So that tells us what we're dealing with. Yes. You're asserting a substantive due process challenge. In that instance, yes. Okay. So we're talking about in what instance? Where the investigatory phase? Yes. Okay. The investigatory phase, you're asserting a substantive due process. That's correct. And what case authority are you relying upon to support your premise that there was a substantive due process violation? I do not have anything. Okay. All right. I'm just trying to figure out what your argument is. Because there is no precedent for the use of administrative subpoenas in this manner to this extent. Secondly. Mr. Seitz, before you go further, I mean, I have the same difficulty Judge Rollinson has. But am I right in thinking this case is being appealed under the complaint you filed on June 22nd, 1999? Yes, it is. Now, I look at that on your causes of action. In the first cause of action, you mention rights guaranteed by the first, fourth, fifth, sixth, eighth, ninth, and fourteenth amendments. Well, you know, that is just kind of throwing it all out there. What does that mean? Judge, you say threatened criminal prosecution constitutes bad faith and a gross violation of the defendant's sworn duties as law enforcement officers. Is that a federal constitutional violation? Let me come back. I mean, it's an amazingly broad and vague and unhelpful statement of a cause of action. And that was not what I learned in law school to plead that way when I last encountered you 35 years ago. However, let me say this. We filed this lawsuit at a preliminary stage in the proceedings. But it's the complaint you're stuck with. That's right. We were the action was stayed. At the point in time we filed it, we were seeking injunctive relief to prevent the second grand jury after the first one had already been dismissed. We had very little. You didn't have to amend the complaint, though. We did ask to amend the complaint. In fact, what happened was that Judge Kaye stayed the proceedings after he denied the injunctive relief. After the Supreme Court of Hawaii issued its ruling in the case that we've cited to you, where they withheld the dismissal of the major criminal case, Judge Kaye then lifted the stay and gave us, I believe, about two weeks' time in which to further brief the issue. We asked at that time if we could amend the complaint. We were not given that opportunity. We were only given the opportunity to brief the issue. Well, you were aware what was coming up, presumably. You'd won in the state courts. And, my goodness, you haven't appealed the failure to the denial of amendment, have you? No. So you're stuck with this complaint. I'm stuck. You chose to go and it is a complaint that's very uninformative. I'm stuck with a complaint as supplemented by the briefs that we filed. Why supplemented? Because you're stuck with these are the allegations you're trying to have tried. Yes. The briefs don't supplement the complaint. Well, the judge, the trial judge basically did not give us that opportunity. Well, he didn't. I mean, he didn't appeal it. So that's why you're stuck. We appealed from his ultimate order dismissing the case based upon the complaint because he found prosecutorial immunity. It didn't matter more specifically what we alleged at that point because his finding was quite clear. He found as a broad issue that all of the acts, many of which are enumerated in the Supreme Court decision, which is a matter of the record, many of which were enumerated in our briefs, he found that all of those acts by all of these actors would be entitled to absolute immunity and it is that broad finding which we disagree with. I would amend this complaint absolutely if I went back to the district court. But I was not afforded the opportunity to amend. And you were afforded the opportunity to appeal that decision. Yes. You did not choose to appeal it. Presumably I guess we could have appealed. Of course you could have appealed it. Presumably we could. But by that time You were stuck with these three very vague, four very vague contentions. It's almost impossible to imagine what you mean by them. Well, that's what I'm starting to tell you more specifically. And I think there is a basis in the record. I started with the administrative subpoenas to which we have objected from the inception. In addition to that, this record is fraught with a policy and practice of continually, excuse me, invading attorney-client relationships. The difficulty I have with your attorney-client argument is that the attorney-client privilege did not belong to your client. Well, the Supreme Court, first of all, addressed the attorney-client privilege with Mr. Frunze, which belonged to Mr. Stone. But the other aspect of attorney-client relationships that were invaded, and it was a policy and practice in this case because it happened five times. Was that the attorney-client privileges that applied to your client invaded? Yes, ma'am. And how? That was with respect to the persistent efforts to attempt to obtain records from the insurance company that included my correspondence with the insurance company that it retained me, my statements to the insurance company about what our strategy and tactics and costs were going to be. So that's back to the administrative subpoenas. No. That's not the administrative subpoenas. These were subpoenas in the civil litigation in the probate court. Right. In which missellers attempted persistently, even after those subpoenas were ordered to be quashed in the criminal case, persistently attempted to obtain information from the insurance company that was clearly of a qualified nature. And if that had been obtained by the Attorney General's Office, would have severely jeopardized my ability to defend my client in the criminal cases. Counsel, let me ask you this. Did you address, raise that issue before the district court? Yes, we did. Where is that in the record? That is in the supplementary brief that we submitted when we complained about the fact that that had been going on. And we attached, and you have in the excerpt of records, some of the exhibits that we attached, including a subpoena. Could you give me a page number? Yes. And the district court did not address that particular issue, did it? The district court did not address that issue. That's correct. And none of that is in your complaint, is it? No, sir, because it happened after. Well, why is it before us? If it's not in your complaint, why is it before us? Because we sought to address it by the judge by attaching the evidence. But that's not the way Federal law proceeds. You proceed by stating your case in a complaint. Well. You amend it if you have to. You didn't amend it. You're stuck with what you have. Don't give us something that's not in the record. And it isn't in the record if it isn't in the complaint. I don't agree with that, Judge Coons. Why not? Because it is in the record. It was submitted at. It's not in the complaint. That's true. All right. The complaint is only a general description of our claims. It's very general. It is general, and I would agree with you. But unfortunately, that's all we had at that time. Well, we've gone through this. And you were going to give me the specific page where you raised this issue. Well, first of all, I will attach, tell you the exhibits that we attached. Well, just give me a page where I can go to that you said to the court, my client's, attorney client's privileges were interfered with by the use of this civil probate court subpoena. Where is that in the record? Okay. It is in the record in conjunction with my submission. We did not have oral argument. But do you have a pleading. Yes. Well, you specifically said the civil probate court subpoenas compromised my client's attorney client privilege. Yes. My supplementary memorandum, which was submitted. What page is that wording on? What page is that issue raised? It was submitted. I'm sorry. I'm trying to read this from the record. It was in April of 2002. It's number 49 in the clerk's record. That is the pleading. Excerpts of record. Yes. It is 49 in the clerk's record. Where is it in the excerpts of record that was submitted to this court? I don't believe we submitted the entire memorandum to you because it's already in the record. But we submitted the exhibits which were attached, which demonstrate that argument. The subpoena, the notice of deposition, all of the documents by which the attorney general's office sought that information, that's all in the excerpt of records. We did not replicate the memorandum in which we argued that because that's part of the clerk's record. We did not submit the entire one. In addition to the invasion of attorney-client relationships, there was conduct before the grand jury which amounted to, in our view, violations that even despite the state of the law with respect to absolute immunity for acts related to the prosecutorial function, we submit goes beyond the realm. And those acts have to do with specifically providing the testimony of investigators who gave opinions about the credibility of witnesses, about their legal duties. And these were the attorney general's own investigators who were called so that they could essentially give opinions which the attorney general himself could not state to the grand jury. And what federal right did that violate? That violates the federal right to a fair grand jury, which clearly is a Fifth Amendment right. Because what happened, as the Hawaii Supreme Court found, was that there was a persistent and deliberate attempt to bolster witnesses' testimony in a manner that a federal prosecutor or a state prosecutor cannot engage in. I'm sorry, go ahead. What case authority are you relying upon to say absolute immunity in a grand jury context is vitiated by bolstering of witnesses' testimony there? Bolstering of witnesses, in and of itself, I do not have authority for, except for the case of the Hawaii Supreme Court decision which you have before you. Well, that's not presidential as far as we're concerned. That's correct. But what case authority are you relying upon to assert the Fifth Amendment violation in light of the absolute immunity that prosecutors generally enjoy presenting matters to the grand jury? The authority is in several cases where courts, this Court included, have said that where prosecutors step outside of their historical role and present information, for example, Kalinka in the Supreme Court, where there were factual representations made as opposed to the presentation of a case by a prosecutor. What were the factual matters that were raised as opposed to a presentation of evidence in this case? The factual matters that were raised by the investigators who testified for the grand jury were, first of all, that my client had breached his fiduciary duty by failing to recuse himself in a timely manner, that my client had breached his fiduciary duties by failing to apprise the State of prior transactions that had occurred and of subsequent transactions which allegedly were the basis for this entire fraud, which allegedly, which was alleged in the theft conviction, excuse me, in the theft indictment. All of those things were testified to as a matter of opinion by the investigators. And you say that that's a constitutional violation for an investigator to give an opinion testimony to the grand jury? Where the Attorney General or the prosecutor elicits opinions, which are essentially his own opinions, as to the quality of the case and the ultimate legal duties, yes, that is improper testimony, that's improper action by a prosecutor that goes well beyond the function of presenting the evidence itself and allowing the grand jury to determine if there is probable cause. A grand jury has the right to reject a case, but if a grand jury is given erroneous advice by the prosecutor in the form of testimony by his investigators, that clearly taints the process and denies the individual the right to a fair grand jury. And that is the case you say supports that proposition now? Well, Kalinka, I think, is one of those cases. Kalinka, what's the citation for that? I'm sorry, Kalina. Kalina versus Fletcher. Oh, Kalina? I'm sorry. 522 U.S. 118. What language are you relying upon in Kalina to support that proposition? In Kalina, there was evidence with respect to applications for warrants and facts that were provided by a prosecutor, which was alleged to be factual information. And the argument is basically when the prosecutor oversteps and provides information which is not historically within the prosecutorial role. Give me the language in Kalina specifically that you're relying upon that supports your argument. I will have to look for it. But that, I believe, is the import of the decision. Mr. Seitz, I have another question. On page 12 of your brief, you say that Assistant Attorney General Goyer elicited privileged and perjured testimony from Frenzy. Yes. What basis do you have for saying the testimony was perjured? Mr. Frenzy testified that he was involved in this transaction as Mr. Stone's attorney and that he was the person who served in the negotiations with the Bishop of State at a point in time when there were difficulties that arose, and that those difficulties were resolved by virtue of taking a break in the negotiations and then all of a sudden the matter would be resolved through some sort of backdoor discussion. Right. But how do you know it was perjured? Because there was subsequent testimony by Bishop of State people, first of all, that Mr. Frenzy was not involved in the negotiations at all. Is that in this record? Yes. In the record of this case? Yes. And you say that that led some court to say Mr. Frenzy was perjuring? No, no court has ever held. We never got that far. That's your characterization. That's my characterization. And you have some basis for that in the record, you're asserting. I do. Because it's very dangerous, as you know, to make statements like that unless you have some support for them. I have no problem making that statement. Well, all right. I have no problem making that statement. And as you know, Mr. Frenzy is a lawyer who subsequently was forced to give up his license. Oh, yes. And we know all these bad people. Well, that was the character of this case, Judge, and that's the problem that we have with it. You know. But the problem that you have with us, at least as I've listened to your argument, we looked at the pleadings. Don't we look at the pleadings? Yes, sir. You are asserting that Judge Kaye made a number of errors that you think are inexcusable. Isn't that so? What I'm saying about Judge Kaye is that he painted with a broad brush when there were so many specific allegations that he needed to analyze those allegations as to each separate defendant separately. And when we look and review what you allege Judge Kaye did wrong, we look to the starting point, which Judge Kaye looks to. Don't we? You do, but as you know. As I followed your argument, you don't want us to do that. You want us to go through the record and pick out a piece here, a piece here, a piece there, and say this whole proceeding is wrong based on that rather than looking at the starting point to see what Judge Kaye had to look at. I don't mind you looking at the starting point because the starting point depicts a situation where my clients had been indicted, his wife had been indicted, his daughter had been named as a co-conspirator, unindicted, where there's an indictment that is absolutely vicious on its face, where if you look at the Hawaii Supreme Court and how they treated that indictment and threw it out because of gross prosecutorial misconduct. And after that happened, the Attorney General turned around and indicted my client two more times, and both of those indictments were thrown out. And we filed this lawsuit midstream in an effort to prevent what was an ongoing, horrible situation that my clients had to face that was ruining their lives for no valid reason. We had certain facts at that point in 1999. Five years later... You know, your time is... I know it is, but I just want to answer your question. Five years later, we have many more facts that we never had the opportunity to present because we did not have the chance to do discovery in this case, we did not have a chance to amend the complaint, and we did not have a chance to particularize... When you say you did not have a chance to amend, you mean you did not want to amend. That's... You had the chance. Two weeks. You did not take a bond? Yes. You decided not to do it. We had two weeks. Judge Kaye asked us for a supplementary memorandum. You asked too long to amend the complaint? Judge Koontz, if you look at his order, Judge Kaye stayed these proceedings. When he lifted the stay... This is Judge Noonan. I'm sorry. Judge Noonan. Excuse me. My mistake. When he lifted the stay, he lifted it solely for the purpose of submitting a supplementary memorandum. That's all he did. Well, you had your chance. To say you didn't have a chance is quite wrong. Counsel, you've exceeded your time. We'll give you one minute for rebuttal. Thank you. May it please the Court. My name is Dorothy Sellers. I'm here this morning on behalf of my coworkers to defend Judge Kaye's summary judgment granting absolute immunity to all the defendants in this case. It occurs to me before I move into my argument, I might answer a question that Judge Noonan asked in a prior case this morning, which is why am I arguing this case. And there are four reasons. One, I believe the claims against Mr. Jones and me have been abandoned. Two, I have the privilege of serving as head of the appellate section of the Department of the Attorney General. You've got to keep your voice up. I can hear you all right, but you want to make sure we're all hearing you. I'm sorry. Three, although my name does not appear on the brief, I wrote every word of it. And four, and I think this is the most important reason, all the appellees asked me to argue the case on their behalf. So I'm here today. The reasons for absolute immunity for prosecutors have nothing to do with any individual prosecutor and everything to do with maintaining and protecting the judicial process. The public policy is that we want prosecutors, the same as judges, to discharge their responsibilities free of fear, free of intimidation, and free of harassment. Counsel, does that go to the investigatory phase as well? Yes, it does. But before I even answer that, I would like to point out that the complaint as to the investigation under Hawaii revised statutes 28-2.5, I thought had been abandoned. That did not seem to be an issue on the appeal brief, and I don't think it's before the court. What the appellant wanted was the court to declare that that process was unconstitutional, and that did not happen and was not raised. But counsel did make the argument that interviewing the disbarred attorney was not entitled, was a process that was not entitled to absolute immunity. That statement is wrong because we go back to Imbler, we go to the functional analysis. Was this a core function that a prosecutor rather than an investigator would perform? And in the specific context of interviewing witnesses, even before a grand jury has been convened, I would ask the court to look at the Demery case where the court said, quoting Imbler, I might add, that conferring with a witness in preparation for his giving testimony at trial is ultimately associated with the judicial phase of the criminal process. Is the same true for a grand jury, which is an investigatory process as opposed to a fact-finding process? Yes, and it's even more true in that situation, I submit, for the following reasons. This label, investigatory grand jury, is not part of the Hawaii revised statutes. There is one grand jury. There is a parlance that some are referred to as investigative and some as charging, but it is simply a label that describes what a particular grand jury is doing at any particular moment. For example, the 1998 grand jury that appellant refers to as an investigative grand jury is in fact the grand jury that indicted Henry Peters. It then expired because grand juries in Hawaii have a short life and they expire. They can't be extended as can federal grand juries. But I think the answer to your question, Judge Rawlings, goes back to footnote 33 of Imbler. Which, of course, I'm having trouble finding when I need it. All right, I have found it. The page is there. This is footnote 33 of Imbler, and I've clipped out the footnote and I don't have the page number. Okay. We recognize that the duties of the prosecutor in his role as advocate for the state involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. Preparation, this goes back to your question about interviewing witnesses, both for the initiation of the criminal process and for a trial may require the obtaining, reviewing, and evaluation. I've read that footnote and nowhere does it say interviewing witnesses. It talks about whether to call a particular witness or not, but it does not talk about interviewing witnesses. Yes, I think that's true, but I think the Ninth Circuit has interpreted that in the Demery case as doing just that. Actually, there's a section in the Imbler case, Judge Rawlinson, that says basically we want, we don't, it says this, it is a core function, this interviewing witnesses of the judicial process, because we don't want our prosecutors to be fearful that they can't interview witnesses or they shouldn't call any witnesses because they're interviewing. And that is exactly the kind of choice we don't want prosecutors to have to make for fear of personal liability. It would be qualified immunity as opposed to absolute immunity. It wouldn't be immunity to disclosure. No, it would be absolute immunity for additional. I mean, if there were no absolute immunity, it wouldn't be liability automatically. It would just be an issue of qualified immunity. Yes, that is true, but I thought Imbler had a good passage. As to why we didn't want to expose a prosecutor to the demands of proving qualified immunity, because when you get right down to it, absolute immunity is a short and straight road, and qualified immunity is sometimes a long and winding road, because sometimes there are fact questions that have to be proven up. You have to prove you acted reasonably. You have to prove you acted in accord with clearly established law. And that is exactly the kind of long and winding road we don't want prosecutors involved in, really. Go ahead. Oh, no, I'm sorry, sir. To help focus, especially since he's got a minute to rebut, what would he have to show in order to show that your colleagues did not have absolute immunity? He would have to show this. I feel like I'm giving legal advice to my opponent, but I'm happy to do it. He would have to show that... Well, you may be helping the court, too. That I'm glad to do. It may be that he would have to show that the actions that we're complaining about were part of a mission that was purely and solely investigatory. And I think that goes back to a sentence that is why the Buckley case turned out the way it did. Their mission, their being the prosecutors, their mission at that time was entirely investigative in character. And here we have this vast expanse of grand jury immunity because if there's one thing that's clear of all the cases, it is that anything that happens in front of a grand jury, even malicious presentation of false and trumped-up evidence, that is absolute immunity. So he would have to prove that there was all these other things going on that had no relationship to any grand jury, to any preparation, to any initiation of any thought of a proceeding. And he can't do it. I could save the court a minute. If the court has no further questions for me, I might... It appears there are no. Then I thank you for your time, and I bid you aloha. Thank you. Much of what we complain about happened in the period of time well before my client was indicted. And that was investigated, and that is part of what we contend. But we also contend that there were, as I said, an extended period of three separate efforts to indict my client before grand juries, each of which turned out to be ill-advised, each of which was dismissed. And what I argue to you is at a certain point in time, as Judge Towne in one of the excerpts that was submitted by Ms. Sellers said, the Attorney General functions as a minister of justice. But at a certain point in time, if in the ardor to bring about a certain result, the person steps outside his or her office and is motivated by and engages in actions which are clearly unprofessional, clearly unethical, and clearly unconstitutional, I would submit to you that at a certain point in time, as I said to you earlier, that person surrenders his or her immunity. Whether it happens at the second indictment, the third indictment, I can't tell you a specific time. But in this case, we complained and complained bitterly about the fact that this alleged Chinese wall was set up, but Ms. Bronster sat on top of it. And that's not a Chinese wall. She was making all the decisions, directing the civil deputies, directing the criminal deputies, in a campaign to go after my client and his family members. And that was not motivated by justice. That was motivated by something else. And we believe that Judge Kaye should be instructed, as this Court has said most recently this last summer, should be instructed to look specifically and more carefully at the acts of each actor to determine which of those acts, functionally, is entitled to immunity. Because in reverse of that ---- I understand your problem, and I accept that problem, but I think there is an explanation, given the procedural history of this case and the limitations that were placed upon us over the long period of time, that did not enable us to go back and reopen certain issues which we perhaps would have done differently. Counsel, we understand your argument. Thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision. The final case on calendar for argument is United States v. Domingo et al.
judges: Silverman, W. Fletcher, Rawlinson